**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Cedric Scott Anderson, | File No. 25-CV-4350 (JMB/LIB) |
| Plaintiff, | |
| v. | **ORDER** |
| City of Duluth; Kyle Pederson, *Duluth Police Department Officer, in their individual and official capacities*; Kaylee McMillen, *Duluth Police Department Officer, in their individual and official capacities*; and Michael Munger, *Duluth Police Department Officer, in their individual and official capacities*; | |
| Defendants. | |

Cedric Scott Anderson, Duluth, MN, self-represented.

Elizabeth Sellers Tabor and Paige Orcutt, City of Duluth Attorney's Office, Duluth, MN, for Defendant the City of Duluth.

Stephanie A. Angolkar, Iverson Reuvers, Bloomington, MN, for Defendants Kyle Pederson, Kaylee McMillen, and Michael Munger.

This matter is before the Court on Defendants Kyle Pederson, Kaylee McMillen, and Michael Munger's (Officers) Motion to Dismiss (Doc. No. 40) and Defendant the City of Duluth's (the City) Motion to Dismiss (Doc. No. 45). For the reasons explained below, the Court grants the Motions.

**BACKGROUND**

On March 23, 2022, Plaintiff Cedric Scott Anderson was lawfully driving his

vehicle in Duluth, Minnesota.  (Doc. No. 38 ¶¶ 13–14 [hereinafter, "SAC"].)  The Officers, all police officers for the City of Duluth, initiated a high-risk traffic stop based on incorrect information from an automated license plate reader (ALPR) system that Anderson's car was stolen.  (*Id.* ¶¶ 15–18, 25–26.)  Defendant Pederson pointed a firearm at Anderson, and Anderson was "ordered out of his vehicle" and "directed to lie on the ground."  (*Id.* ¶ 21.)  Anderson "immediately and fully complied with all commands issued by Defendants."  (*Id.* ¶ 22.)  Anderson was "handcuffed, searched, and placed in the back of a squad car for approximately fifteen minutes."  (*Id.* ¶ 24.)  The Officers then learned from dispatch that the vehicle was not stolen, and Anderson was "released without citation or charge."  (*Id.* ¶ 26.)

Anderson's Second Amended Complaint (SAC) asserts four claims against the Officers: Count I for unreasonable seizure (*id.* ¶¶ 28–32), Count II for false arrest (*id.* ¶¶ 33–37), Count III for excessive force (*id.* ¶¶ 38–42), and Count IV for failure to intervene (*id.* ¶¶ 43–45).  The SAC also asserts Count V, a claim against the City, for municipal liability.  (*Id.* ¶¶ 46–49).

## DISCUSSION

The Officers and the City have moved to dismiss.  On a motion to dismiss under Rule 12(b)(6), courts consider all facts alleged in the complaint to be true and then determine whether the complaint states a "claim to relief that is plausible on its face."  *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A pleading has facial plausibility when its factual allegations "allow[] the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  In this analysis, courts construe the allegations and draw inferences from them in the light most favorable to the plaintiff.  *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018).  However, courts will not give plaintiffs the benefit of unreasonable inferences, *Brown v. Medtronic, Inc.*, 628 F.3d 451, 461 (8th Cir. 2010), and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  For the reasons discussed below, the Court grants both Motions to Dismiss.

## I.     CLAIMS AGAINST OFFICERS

The Officers move to dismiss Counts I–IV under Federal Rule of Civil Procedure 12(b)(6), arguing that they are entitled to qualified immunity.  (*See generally* Doc. No. 41.) The Court agrees with the Officers that the doctrine of qualified immunity applies, and that the factual allegations are not sufficient to state a viable claim for unreasonable seizure, false arrest, excessive force, or failure to intervene.  Thus, the Court grants the motion.

In general, the doctrine of qualified immunity protects government officials like police officers from liability "unless their conduct violated a clearly established constitutional or statutory right of which a reasonable person would have known." *Littrell v. Franklin*, 388 F.3d 578, 582 (8th Cir. 2004).  This immunity shields all government officials, except for "the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *see also Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012) (advising that officers "are not liable for bad guesses in gray areas; they are liable for transgressing bright lines" (quotation omitted)).  Courts can and

3

should rule on defendants' assertions of qualified immunity "at the earliest possible stage in litigation," including at the pleading stage. *Payne v. Britten*, 749 F.3d 697, 701–02 (8th Cir. 2014).

Under the doctrine of qualified immunity, courts conduct a two-pronged analysis: "[1] whether the plaintiff has stated a plausible claim for violation of a constitutional or statutory right and [2] whether the right was clearly established at the time of the alleged infraction." *Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

### A.      Unreasonable Seizure

Anderson alleges that the Officers[1] violated his Fourth Amendment rights when they "blocked his vehicle with multiple squad cars, prevented any movement, issued commands at gunpoint, and restrained his liberty." (SAC ¶ 29.) He claims that the Officers lacked reasonable suspicion that Anderson was committing or had committed any crime, and that the seizure was based solely on an unverified ALPR alert. (*Id.* ¶¶ 30–31.)

When determining whether an officer is entitled to qualified immunity, courts account for objectively reasonable mistakes. *Brown v. City of St. Louis*, 40 F.4th 895, 903 (8th Cir. 2022); *see also Anderson v. Creighton*, 483 U.S. 635, 641 (1987) ("We have recognized that it is inevitable that law enforcement officials will in some cases reasonably

---

[1] The Court notes that the SAC does not consistently specify which Officer—Pederson, McMillen, or Munger—committed which specific act.

but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable."). "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*, 555 U.S. at 231 (quotation omitted).

Here, the ALPR indicated that Anderson's vehicle may have been stolen. Although the Defendant Officers later learned that this information was mistaken, the Court concludes that it was reasonable for them to rely on the information they received from the ALPR system. The Court therefore concludes that there was no Fourth Amendment violation as to Count I and dismisses this claim.

### B.   False Arrest

Anderson also alleges that the Officers "escalated the encounter into a de facto arrest by drawing firearms, ordering [Anderson] from his vehicle, forcing him to the ground, handcuffing him, and confining him in a squad car." (SAC ¶ 34.)

A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause, and an officer is entitled to qualified immunity if there is at least "arguable probable cause." *Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir. 2005) (quotation omitted). An officer has probable cause to make a warrantless arrest when the totality of the circumstances at the time of the arrest "are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." *Fisher v. Wal-Mart Stores, Inc.*, 619 F.3d 811, 816 (8th Cir. 2010) (quotation omitted). "Arguable probable

cause exists even where an officer mistakenly arrests a suspect believing it is based in probable cause if the mistake is objectively reasonable." *Borgman v. Kedley*, 646 F.3d 518, 523 (8th Cir. 2011).

"A de facto arrest occurs when the officer's conduct is more intrusive than necessary for a *Terry* investigative stop." *United States v. Sanford*, 813 F.3d 708, 712–13 (8th Cir. 2016). An investigative stop may become an arrest, thereby "requiring probable cause, if the stop lasts for an unreasonably long time or if officers use unreasonable force." *Id.* at 713 (quotation omitted). Use of handcuffs does not automatically turn an investigative stop into a de facto arrest. *See United States v. Fisher*, 364 F.3d 970, 973 (8th Cir. 2004) ("It is well established . . . that when officers are presented with serious danger in the course of carrying out an investigative detention, they may brandish weapons or even constrain the suspect with handcuffs in order to control the scene and protect their safety."). Officers may use handcuffs during an investigative stop if they have some reasonable belief that the suspect is armed and dangerous or that the restraints are necessary for some other legitimate purpose. *Pollreis v. Marzolf*, 9 F.4th 737, 745 (8th Cir. 2021). To determine the reasonableness of such measures, we analyze "whether the officer has an objectively reasonable concern for officer safety or suspicion of danger." *Sanford*, 813 F.3d at 713 (quotation omitted).

As discussed above, the Court concludes that it was objectively reasonable for the Officers to rely on the information they received from the ALPR system that Anderson's vehicle was stolen. Furthermore, the Officers' use of handcuffs did not convert their interaction with Anderson into a de facto arrest because it was objectively reasonable to

6

believe that Anderson had committed a serious crime and that it was necessary to control the scene and protect their and others' safety. Therefore, the Court concludes that there was no constitutional violation as to Count II and dismisses this claim.

### C.       Excessive Force

Anderson alleges that the Officers "used force against [him] by pointing a firearm directly at him, ordering him to the ground, handcuffing him, and detaining him." (SAC ¶ 39.)

When evaluating a Fourth Amendment excessive force claim under section 1983, courts consider whether the amount of force used was objectively reasonably under the particular circumstances. *Kohorst v. Smith*, 968 F.3d 871, 876 (8th Cir. 2020). Courts "evaluate the reasonableness of the force used from the perspective of a reasonable officer on the scene, not with the benefit of hindsight." *Id.* "This evaluation entails careful consideration of the case's particular facts and circumstances, including: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officers or others; and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Id.* (quotation omitted). Police officers have the right to use some physical force when effectuating a lawful seizure or arrest. *Johnson v. Carroll*, 658 F.3d 819, 825 (8th Cir. 2011). Moreover, the Eighth Circuit has expressed that some use of force is inevitable in the handcuffing of a suspect. *See Chambers v. Pennycook*, 641 F.3d 898, 907 (8th Cir. 2011). "For the application of handcuffs to amount to excessive force, there must be something beyond minor injuries." *Hanig v. Lee*, 415 F.3d 822, 824 (8th Cir. 2005). A de minimis use of force cannot be the basis for a Fourth Amendment claim.

*Setchfield v. St. Charles Cnty.*, 109 F.4th 1084, 1092 n.3 (8th Cir. 2024); *see also Waters v. Madson*, 921 F.3d 725, 739–40 (8th Cir. 2019) (citing cases that illustrate the meaning of de minimis force). Whether pointing a gun at an individual constitutes excessive force depends on the facts and circumstances of the case. *See Wilson v. Lamp*, 901 F.3d 981, 990 (8th Cir. 2018).

The Court concludes that the amount of force used was reasonable and not excessive. Here, the SAC alleges that Defendant Pederson "exited his squad car, drew his firearm, and pointed it directly at [Anderson]." (SAC ¶ 20.) The SAC does not address whether Pederson continued to point his gun at Anderson beyond this initial interaction. Pederson was responding to the ALPR information that Anderson had stolen a vehicle, which is a felony in Minnesota. *See* Minn. Stat. § 609.52. Pointing a firearm at a person suspected of committing a serious crime before the scene has been controlled is a reasonable use of force; furthermore, the SAC does not suggest that Pederson pointed his firearm at Anderson for an unreasonable length of time. *See Alvarado v. Moore*, No. 24-CV-288 (DWF/DTS), 2024 WL 4355064, at *4 (D. Minn. Sept. 30, 2024) ("While a police officer may brandish their weapon when presented with a serious danger, an officer cannot continue to point a gun at an individual after the circumstances making such use of force reasonable have changed." (citing *Williams v. Decker*, 767 F.3d 734, 740 (8th Cir. 2014))). Additionally, the Court concludes that the force used to order Anderson to the ground, handcuff, and detain him—in the context of what the Officers believed to be a stop of a stolen vehicle—was reasonable and not excessive, and the SAC alleges no facts to suggest otherwise. The Court therefore concludes that there was no constitutional violation as to

Count III and dismisses this claim.

### D. Failure to Intervene

Finally, Anderson alleges that McMillen and Munger "observed Defendant Pedersen's unconstitutional seizure, arrest, and use of force" and failed to intervene. (SAC ¶¶ 44–45.) Such claims are derivative of the excessive force claim discussed and dismissed above. *See Dukeman v. Ste. Genevieve Cnty.*, 167 F.4th 500, 505 (8th Cir. 2026) (stating that a claim for failure to intervene requires an observation "that excessive force would be or was being used" and "the opportunity and the means to prevent the harm from occurring").[2] Because the SAC does not include allegations to establish a claim of excessive force, the Court is also compelled to dismisses the claim for failure to intervene.

## II. CLAIM AGAINST CITY OF DULUTH

Anderson also asserts one claim against the City for municipal liability. (SAC ¶¶ 46–49.) He claims that the City's "policies, customs, or practices, including permitting enforcement actions based on unverified ALPR data" caused his constitutional violations, and that the City "failed to adequately train, supervise, and discipline officers regarding lawful ALPR use and escalation of force." (*Id.* ¶¶ 47–48.) As noted above, however, the Officers are entitled to qualified immunity and the SAC does not include allegations sufficient to establish a violation of a plaintiff's constitutional rights. Absent a

---

[2] In addition, the SAC does not include any allegation that either McMillen or Munger had the opportunity and the means to prevent the any harm from occurring. Instead, the SAC alleges only that McMillen and Munger "were present throughout the encounter, observed the unconstitutional conduct, and failed to intervene." (SAC ¶ 27.) For this separate reason, the Court grants the motion to dismiss the claim for failure to intervene.

9

constitutional violation, the City cannot be liable.  *See, e.g.*, *Partridge v. City of Benton*, 157 F.4th 970, 973 (8th Cir. 2025) ("[M]unicipal and supervisory liability cannot attach without a prior finding of individual liability on an underlying substantive claim."); *Johnson v. City of Ferguson*, 926 F.3d 504, 507 (8th Cir. 2019) (en banc) ("In light of our holding that no seizure and thus no constitutional violation occurred in this case, Johnson's claim of supervisory liability against Chief Jackson necessarily fails, as perforce does any claim of municipal liability against the City of Ferguson."); *Roberts v. City of Omaha*, 723 F.3d 966, 976 (8th Cir. 2013) ("Our decision granting qualified immunity to the individual officers necessarily forecloses liability against the municipality on Roberts's failure to train claims as well.").  Accordingly, the Court also dismisses Count V.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendants Kyle Pederson, Kaylee McMillen, and Michael Munger's Motion to Dismiss the Second Amended Complaint (Doc. No. 40) is GRANTED.

2. Defendant the City of Duluth's Motion to Dismiss the Second Amended Complaint (Doc. No. 45) is GRANTED.

3. Plaintiff's Motion to Remove Co-Plaintiff Nicole Olson from the Complaint (Doc. No. 37) is DENIED AS MOOT.

4. This action is DISMISSED WITH PREJUDICE.[3]

---

[3] Courts ultimately have discretion to decide between a dismissal with prejudice and one without prejudice.  *See Paisley Park Enters., Inc. v. Boxill*, 361 F. Supp. 3d 869, 880 n.7 (D. Minn. 2019).   A dismissal with prejudice is typically appropriate when a plaintiff has shown persistent pleading failures despite one or more opportunities to amend or when the record makes clear that amendment would be futile.  *See Paisley Park*, 361 F. Supp. 3d at

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  July 24, 2026                                    /s/ *Jeffrey M. Bryan*
                                                         Judge Jeffrey M. Bryan
                                                         United States District Court

---

880 n.7; *O'Neil v. Simplicity, Inc.*, 553 F. Supp. 2d 1110, 1119 (D. Minn. 2008) (dismissing with prejudice after plaintiff had three opportunities to plead but failed to do so with success); *Milliman v. Cnty. of Stearns*, No. 13-CV-136 (DWF/LIB), 2013 WL 5426049, at *16 (D. Minn. Sept. 26, 2013) (dismissing with prejudice for consistent pleading failures).  Dismissal without prejudice may be justified when a plaintiff's claims "might conceivably be repleaded with success." *Washington v. Craane*, No. 18-CV-1464 (DWF/TNL), 2019 WL 2147062, at *5 (D. Minn. Apr. 18, 2019), *report and recommendation adopted*, 2019 WL 2142499 (D. Minn. May 16, 2019).  Here, Anderson has been afforded two opportunities to amend his Complaint, and his claims cannot "conceivably be repleaded with success." *See Craane*, 2019 WL 2147062, at *5.  Consequently, they will be dismissed with prejudice.